UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
VIAQUEST HOSPICE OF INDIANA, LLC;
VIAQUEST HOME HEALTH OF INDIANA,
LLC; AND VIAQUEST HOLDINGS LTD.,                CASE NO.:

      Plaintiffs,

           - against -

TRILOGY HEALTH SERVICES, LLC; AND
TRILOGY FSC INVESTORS, LLC,
                                      AUGUST 1, 2017
      Defendant.
---------------------------------------------------------------- x

## COMPLAINT

Plaintiffs ViaQuest Hospice of Indiana, LLC, ViaQuest Home Health of Indiana, LLC, and ViaQuest Holdings, LTD. (collectively "Plaintiffs" or "ViaQuest"), by and through their undersigned counsel, Robinson & Cole LLP, for their Complaint allege as follows:

### NATURE OF ACTION

1.    By this action, ViaQuest seeks money damages along with attorney's fees arising out of the breaches by Defendants Trilogy Health Services, LLC, and Trilogy FSC Investors, LLC (collectively "Defendants") of their contractual duties owed to ViaQuest contained in the Provider Services Agreement, dated March 18, 2014, as amended (the "PSA"), and the Subordinated Promissory Note, dated March 31, 2014 (the "Note"). Specifically, Defendants have, despite being given numerous opportunities to cure their breaches, repeatedly and willfully failed to recommend to their patients that they use the home health and hospice services of ViaQuest in preference to other providers of home care and hospice services, as required by the PSA. Moreover, despite numerous notices to Defendants that one or more of their facilities and/or the staff thereof are not complying with Defendants' obligations under the PSA,

16722550

Defendants have taken no efforts to cure these breaches, despite being expressly required to do so under the PSA. As a result of Defendants' actions and inactions, ViaQuest is entitled to set off and recoup its losses under the Note and to such other relief as this Court may deem advisable.

## PARTIES

2. ViaQuest Hospice of Indiana, LLC, ViaQuest Home Health of Indiana, LLC, and ViaQuest Holdings, LTD are limited liability companies organized under the laws of Ohio. ViaQuest Hospice of Indiana, LLC and ViaQuest Home Health of Indiana, LLC have their principal offices located in Evansville, Indiana. ViaQuest Holdings, LTD has its principal office located in Dublin, Ohio. For purposes of diversity, ViaQuest is a citizen of the states of Ohio and Indiana.

3. Trilogy Health Services, LLC and Trilogy FSC Investors, LLC are limited liability companies organized under the laws of Delaware. Upon information and belief, Trilogy Health Services, LLC and Trilogy FSC Investors, LLC have their principal offices located in Louisville, Kentucky. For purposes of diversity, Trilogy is a citizen of the states of Delaware and Kentucky.

## VENUE AND JURISDICTION

4. The Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000.00 exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

5. The Court has personal jurisdiction over Defendants because they consented to the jurisdiction of this Court in the Asset Purchase Agreement, dated March 18, 2014 (the "APA"), and the Note. Specifically, the "Jurisdiction and Venue" provision of the APA reads, in relevant party, as follows: "The parties agree that any claim relating to this Agreement or any

Transaction Document shall (unless otherwise expressly provided for therein) be brought solely in the state and federal courts located in New York County, New York and all obligations to personal jurisdiction and venue in any proceeding so commenced are hereby expressly waived by all parties hereto . . . ." Similarly, the "Jurisdiction and Venue" provision in the Note reads, in relevant part, as follows: "This Note shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to its principles regarding conflicts of law. Any claim relating to this Note shall be brought solely in the state and federal courts located in New York Count[y], New York and all obligations to personal jurisdiction and venue in any proceeding so commenced are hereby waived. . . ."

6. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because in the "Jurisdiction and Venue" provision in the APA and the Note, the parties agreed that any claims between the parties would be brought in the New York State or Federal Courts.

## BACKGROUND FACTS

7. ViaQuest is a licensed home health and hospice agency that provides home care and hospice services in Indiana and Ohio.

8. Defendants own, operate, and provide skilled nursing care and related services in facilities-based residential settings.

9. At times Defendants' patients, per their physician's orders, require home health and/or hospice services in their home setting, including Defendants' nursing or residential Facilities.

10. Up until March of 2014, Defendants provided home health and/or hospice services to their patients requiring such services.

Transaction Document shall (unless otherwise expressly provided for therein) be brought solely in the state and federal courts located in New York County, New York and all obligations to personal jurisdiction and venue in any proceeding so commenced are hereby expressly waived by all parties hereto . . . ." Similarly, the "Jurisdiction and Venue" provision in the Note reads, in relevant part, as follows: "This Note shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to its principles regarding conflicts of law. Any claim relating to this Note shall be brought solely in the state and federal courts located in New York Count[y], New York and all obligations to personal jurisdiction and venue in any proceeding so commenced are hereby waived. . . ."

6. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because in the "Jurisdiction and Venue" provision in the APA and the Note, the parties agreed that any claims between the parties would be brought in the New York State or Federal Courts.

## BACKGROUND FACTS

7. ViaQuest is a licensed home health and hospice agency that provides home care and hospice services in Indiana and Ohio.

8. Defendants own, operate, and provide skilled nursing care and related services in facilities-based residential settings.

9. At times Defendants' patients, per their physician's orders, require home health and/or hospice services in their home setting, including Defendants' nursing or residential Facilities.

10. Up until March of 2014, Defendants provided home health and/or hospice services to their patients requiring such services.

11. On March 18, 2014, ViaQuest (and its affiliates) and Defendants (and its affiliates) entered into an Asset Purchase Agreement (the "APA"), whereby ViaQuest purchased Trilogy's home care and hospice operations in Indiana.

12. Pursuant to the APA, Defendants and its affiliates agreed "to indemnify [ViaQuest] from, against and in respect of any and all damages [ ], losses, obligations, liabilities, liens, deficiencies, costs and expenses, including reasonable attorneys' fees . . . to the extent [ViaQuest's] Losses are related to or arise by reason of . . . (ii) any failure by [Trilogy] to observe or perform its covenants and agreement set forth in any Transaction Document . . . ." *See* APA, Art. VIII, Sec. 802(a).

13. In connection with the consummation of the APA, Defendants and ViaQuest entered into a Provider Services Agreement, dated March 18, 2014, as amended (the "PSA").

14. "Transaction Document", as defined in the APA, includes the PSA. *See id.*, Art. XI, Sec. 1101 (zzzz).

15. Pursuant to the PSA, Defendants designated ViaQuest and its affiliates as their provider of choice for their patients who require home health and/or hospice services.

16. Per Section I (1) of the PSA, Defendants "designate[d] [ViaQuest] and its Affiliates as its home healthcare services and hospice service provider of choice for all current and future Patients in [ViaQuest's] Geographic Service Area."

17. Per Section I (2) of the PSA, "Trilogy agree[d] to recommend to the Patients that … they consider using the home health and hospice services of [ViaQuest] in preference to other providers of home care services and hospice services."

18. Per Section III (6) of the PSA, "[i]n the event [ViaQuest] advise[d] [Trilogy] that one or more of its facilities or the staff thereof are not complying with any of Trilogy's

4

obligations hereunder, Defendants shall use its best efforts to cause such facilities and/or staff members to cure such non-compliance within ten (10) days of receipt of such notice."

19. In consideration of ViaQuest's designation as the preferred provider of choice for home care and hospice services and Defendants exiting the business of providing home health and hospice services, ViaQuest made certain commitments to Defendants, including agreeing to provide home health and hospice services in accordance with generally accepted standards in the home health and hospice services industry. *See* PSA, sec. II.

20. Pursuant to the APA, the total purchase price for the assets purchased was $9,000,000 of which $5,125,000 was paid in cash at closing of the APA.

21. ViaQuest agreed to pay Defendants the balance of the purchase price of $3,875,000.00 in accordance with the payment schedule set forth in the Note.

22. The principal amount of the Note was to be repaid as follows:

    (a) Eight Hundred and Seventy Five Thousand Dollars ($875,000) on December 31, 2014;

    (b) Seven Hundred and Fifty Thousand Dollars ($750,000) on December 31, 2015;

    (c) Seven Hundred and Fifty Thousand Dollars ($750,000) on December 31, 2016;

    (d) Seven Hundred and Fifty Thousand Dollars ($750,000) on December 31, 2017; and

    (e) Seven Hundred and Fifty Thousand Dollars ($750,000) on December 31, 2018.

*See* the Note, Sec. 2.

23. Pursuant to Section 8 of the Note, ViaQuest has the right to offset on a dollar for dollar basis the amount of its losses resulting from Defendants' failure to comply with the PSA against the next successive principal payment(s) under the Note. *See* APA, Art. VIII, Sec. 802(a); Art. XI, Sec. 1101 (zzzz).

24. ViaQuest made the December 31, 2014 and December 31, 2015 principal payments and seeks repayment of such amounts due to Defendants' breaches of the APA and PSA.

25. ViaQuest withheld the December 31, 2016 payment under the Note because, as detailed below, ViaQuest has suffered and continues to suffer substantial losses as a result of Defendants' non-compliance with the PSA.

26. Prior to the APA, Trilogy's home care division had a penetration rate of 40% across all of Defendants' campuses.

27. Throughout the negotiations leading up to the closing of the transaction in March of 2014, and as a material inducement to ViaQuest to consummate the transaction Trilogy stated that with ViaQuest's expertise, home care penetration should reach 60% of the eligible Trilogy population requiring home care and hospice services.

28. Following the closing of the APA and commencement of the PSA, however, despite ViaQuest's full performance under the PSA, ViaQuest's penetration rate dropped to 16.8% in 2015 and has failed to make substantial gains since that point. ViaQuest's 2017 annualized year-to-date penetration rate sits at 15.1%.

29. By way of example, prior to the APA, Defendants' home care division had a penetration rate of 44% from Trilogy's StoneBridge campus. Following closing of the APA and the commencement of the PSA, ViaQuest's penetration rate at the StoneBridge campus dropped

to 7% in 2015 and has dropped even further since that point. ViaQuest's 2017 annualized year-to-date penetration rate for the StoneBridge campus sits at 2.9%.

30.     Upon information and belief, the director of Defendants' StoneBridge campus has told ViaQuest's representatives that they are not welcome on its campus and that StoneBridge refers discharges to one of ViaQuest's competitors in direct violation of the PSA.

31.     Similarly, prior to the closing of the APA, Trilogy's home care division had a penetration rate of 60% from Defendants' Bethany Pointe campus. Following the closing of the APA and the commencement of the PSA, ViaQuest's penetration rate at the Bethany Pointe campus dropped to 5% in 2015 and has dropped even further since that point. ViaQuest's 2017 annualized year-to-date penetration rate for the Bethany Pointe campus sits at 0%.

32.     Upon information and belief, the director of Defendants' Bethany Pointe campus refers discharges to a friend at one of ViaQuest's competitors in direct violation of the PSA.

33.     Prior to the closing of the APA, Trilogy's home care division had a penetration rate of 100% from Defendants' Cobblestone campus. Following the closing of the APA and the commencement of the PSA, ViaQuest's penetration rate at the Cobblestone campus dropped to 48.3% in 2015 and has dropped even further since that point. ViaQuest's 2017 annualized year-to-date penetration rate for the Cobblestone campus sits at 13.3%.

34.     Upon information and belief, the director of Defendants' Cobblestone campus is affiliated with one of ViaQuest's competitors and refers discharges to this provider in direct violation of the PSA.

35.     Even more egregious, on or about June of 2017, Defendants' staff at the Hearthstone Health Campus in Bloomington, Indiana unilaterally determined to discharge numerous hospice patients to a competitor of ViaQuest despite the patients' and their families'

express desire to remain with ViaQuest. Not only is Trilogy not performing its obligations under the PSA, but its affirmative and improper interference with ViaQuest's business and professional relationships is harmful to patient care and further damages ViaQuest and its standing in the community.

36. Upon additional information provided by ViaQuest's representatives, Defendants have failed to recommend to its patients that they consider using the home health and hospice services of ViaQuest in preference to other providers of home care services and hospice services; has excluded ViaQuest representatives from certain of its facilities; has referred homecare and/or hospice patient's to ViaQuest's direct competitors; has told patients and/or their families that ViaQuest is persona non grata; has told patients and/or their families that a ViaQuest competitor is their preferred partner, not ViaQuest; has caused existing hospice patients who were pleased with ViaQuest's services and patient care to be discharged to another provider despite such patients' desire to remain with ViaQuest; and/or has failed to educate its employees, agents, and/or representatives of the contractual relationship between Defendants and ViaQuest.

37. On December 28, 2016, ViaQuest again notified Defendants that it had not complied with its obligations under the PSA by, among other reasons, neglecting and/or failing to assist ViaQuest as its provider of choice and in some cases even permitting ViaQuest to be improperly excluded in certain locations.

38. Despite this written notice, and numerous other previous notices that one or more of Trilogy's facilities or the staff thereof were not complying with its obligations under the PSA and ViaQuest's efforts to have Trilogy comply with its obligations under the PSA, Trilogy has failed to take any measures, let alone use its best efforts, to cure its non-compliances, as is required by the PSA.

## FIRST COUNT
## (BREACH OF CONTRACT)

39. ViaQuest repeats and realleges the allegations set forth in paragraphs 1 through 38.

40. Defendants entered into and agreed to the terms of the PSA and the Note with ViaQuest, and, therefore, are bound by their terms.

41. The PSA and the Note are enforceable and impose upon Defendants contractual obligations.

42. ViaQuest fully performed its obligations to Defendants pursuant to the PSA and the Note.

43. Trilogy's actions and/or inactions, as described above, are in direct violation of, and material breaches of, the PSA.

44. As a direct result of Defendants' breaches of the PSA, ViaQuest has suffered damages, including, but not limited to Losses, as that term is defined in the APA and referred to in the Note.

## PRAYER FOR RELIEF

WHEREFORE, ViaQuest respectfully demands that the Court issue judgment against Defendants granting relief as follows:

(a) A set-off on a dollar for dollar basis of the amount of ViaQuest's losses against the next successive payment(s) of principal due under the Note;

(b) A set-off on a dollar for dollar basis of all previously paid amounts paid to Defendants against the next successive payment(s) of principal due under the Note;

(c) Recoupment of all amounts previously paid to Defendants;

   (d)  Costs and attorneys' fees reasonably incurred in connection with this proceeding; and

   (e)  Other and further relief as may be just and proper.

> PLAINTIFFS,
> VIAQUEST HOSPICE OF INDIANA, LLC; VIAQUEST HOME HEALTH OF INDIANA, LLC; AND VIAQUEST HOLDINGS LTD.,
>
> By /s/ *Joseph L. Clasen*
>   Joseph L. Clasen
>   Ian T. Clarke-Fisher
>   Robinson & Cole LLP
>   666 Third Avenue
>   New York, New York 10017
>   Phone: (212) 451-2900
>   E-mail: jclasen@rc.com
>   E-mail: iclarke-fisher@rc.com
>   Its Attorneys